**IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| IRINA KABAKOVA<br>5571 Harpers Ferry Road<br>Columbia, MD 21044<br><br>   *Plaintiff*<br><br> v.<br><br>OFFICE OF THE ARCHITECT OF<br>THE CAPITOL<br>Ford House Office Building<br>Room265A<br>Washington, DC  20529<br><br>   *Defendant.* | )<br>)<br>)<br>) Case No.: 1:19-cv-1276<br>)<br>)<br>)<br>)<br>) Jury Trial Demand<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff Irina Kabakova, by and through counsel, hereby files this Complaint for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a*.*, against Defendant the Office of The Architect of Capitol.

**Jurisdiction and Venue**

1. This court has jurisdiction over the subject matter of this complaint pursuant to the Congressional Accountability Act of 1995, 2 U.S. C. § 1301 et. seq, which requires legislative branch entities to follow employment laws applicable to executive branch agencies,  28 U.S.C. § 1331, 42 U.S. C. § 2000e *et seq.,* and 29 U.S.C. § 633a.

2. Plaintiff has exhausted all administrative remedies prior to filing suit. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or

omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant may be found in this judicial district.

## Parties

3.     Plaintiff Irina Kabakova (hereinafter "Plaintiff" or "Kabakova") is a Caucasian American female, born in Russia, and was forty-nine years old at the time of the events giving rise to this Complaint.

4.     Defendant Architect of the Capitol (hereinafter "Defendant" or the "Agency"), is an entity of the legislative branch of the United States government and an "employer" within the meaning of the Congressional Accountability Act and statutes under which Plaintiff brings her claims.

## Factual Allegations

5.     Plaintiff Kabakova was hired at the Office of the Architect of the Capitol as a GS-13 Safety Occupational Health Manager, Office of Security Programs in 2015. Plaintiff Kabakova was responsible to visiting various sites and buildings at the U.S. Capitol and conducting safety inspections and investigations.  Initially, Plaintiff Kabakova's supervisor was Chrissy Widner from 2014 to 2015, then Ken Eads, and finally, John Kelly.

6.     Plaintiff Kabakova was well-regarded and successful in her position and developed and implemented the first AOC Office of Security Programs' Safety and Health Fair.  She received outstanding performance ratings.

7.     Each year of her employment with the Architect, Plaintiff Kabakova had an Individual Development Plan (IDP), and she attended training and conferences.  In 2016, Mr. Eads approved $10,000 for Plaintiff Kabakova to participate in the Excellence in

Government (EIG) Fellows program.  In 2017, her employer approved over $11,000 for her to participate in the EIG program. Only GS-13 employees who receive a rating of outstanding can participate in the EIG program.

8.     John Kelly, an American born, Caucasian male became Plaintiff Kabakova's supervisor in March 2016.  On August 16, 2016, Mr. Kelly signed a letter for recommendation for Plaintiff Kabakova to attend the Fall 2016/2017 Partnership for Public Service, Excellence in Government Fellows (EIG) program, which had been approved by Mr. Eads.  Despite her exceptional performance, Mr. Kelly began harassing Plaintiff Kabakova on the first day he met her. During one of their first meetings, he commented that because of Plaintiff Kabakova's age and experience, she did not need any additional training.  Within the first week of Mr. Kelly becoming her supervisor, he attempted to lower her performance evaluation for the period ending March 30, 2016, but her supervisor, Mr. Eads, would not permit him to do so and reversed his actions and issued her an outstanding evaluation.  Throughout her employment he mocked her accent and would pretend that he would not understand her and made fun of her accent.  He also sexually harassed her and subjected her to a hostile work environment.  He later announced to her that he did not want her to telework, and as a result, Plaintiff Kabakova decided she would no longer telework in 2016.  Mr. Kelly then attempted to cover up the issue by asking Plaintiff Kabakova to change the reason she indicated she stopped teleworking. As Plaintiff Kabakova continued to perform her safety inspection duties, Mr. Kelly refused to cooperate with her inspections and willfully violated safety requirements and directed her to violate safety requirements as well.

9.  On December 20, 2016, Plaintiff Kabakova reported to Mr. Eads that Mr. Kelly was harassing her and Mr. Eads responded, "I believe you." Mr. Eads added that the Director of the Agency could move her from Mr. Kelly's supervision and he would need a recommendation to do so. Plaintiff Kabakova filed an EEO complaint against Mr. Kelly, alleging sexual harassment, age and national origin discrimination, and a hostile work environment.

10. On December 20, 2016, Plaintiff Kabakova sent an email to Ken Eads, Mr. Kelly's supervisor, requesting that he temporarily move her position under a supervisor other than Mr. Kelly until her EEO claim was resolved because she feared her health would continue to deteriorate. Mr. Eads became upset with Ms. Kabakova and advised that he would not move her position under a different supervisor because her complaint was in the EEO process.

11. On December 21, 2016, Plaintiff Kabakova met with the Agency's EEO counselor, Ed Lopez, and provided information about her EEO claims. Following this meeting, due to workplace stress, Plaintiff Kabakova lost her voice and could only whisper for a short time because of the pain.

12. After Plaintiff Kabakova filed an EEO complaint against Mr. Kelly, Mr. Kelly began to retaliate against Plaintiff Kabakova. First, he cancelled a staff meeting in February 2017 to prevent Plaintiff Kabakova from making a monthly safety presentation. Plaintiff Kabakova believes that the meeting was cancelled because Mr. Kelly feared that Plaintiff Kabakova would talk about his sexual harassment of her. Mr. Kelly stated to Plaintiff Kabakova and Mr. Eads that he did not want to work with Plaintiff Kabakova. Ms. Kabakova observed that Mr. Kelly sabotaged her work and would not take actions on

her request for safety investigations and inspections, which placed the public at risk and therefore she later initiated a complaint with the Architect of the Capitol Office of Inspector General regarding the conduct of Mr. Kelly. Mr. Kelly also interfered with the investigation of Ms. Kabakova's EEO complaint. The EEO investigator, Ed Lopez, informed Ms. Kabakova that Mr. Kelly called his boss and the investigation of her EEO complaint was "stopped in its tracks."

13. Plaintiff Kabakova decided to withdraw her EEO complaint in February 2017.

14. On March 23, 2017, Plaintiff Kabakova requested time to attend training in June 2017 and approval of related expenses, including registration fee/travel estimates of $2,284. On March 23, 2017, Mr. Kelly advised Plaintiff Kabakova that he would not approve her request to attend training. When questioned by Plaintiff Kabkova about why the request was denied, Mr. Kelly accused Plaintiff Kabakova of lying and claimed that Plaintiff Kabakova had a perception problem. Mr. Kelly also isolated Ms. Kabakova from team projects for which the team received awards. He did not inform her about meeting cancellations, denied her training and threatened her employment. On one occasion, Mr. Kelly threatened Plaintiff Kabakova that he would say that she was copying secret/protected documents from the Office of Security Programs because she was foreign born and would find witnesses to say that she committed these crimes. Mr. Kelly encouraged Ms. Kabakova's office mates to avoid her and created a team boycott of her.

15. In April 2017, Mr. Kelly advised Plaintiff Kabakova that he would provide a reference for her to attend the Excellence in Government Fellows program in 2017-2018, but he later failed to submit the letter of recommendation for the program.

16. On April 13, 2017, Plaintiff Kabakova was injured on the job when she slipped on stairs and struck her head and suffered a concussion. Plaintiff Kabakova filed a claim for a traumatic injury on April 19, 2017 with the Architect of the Capitol and later with the U.S. Department of Labor. Rather than process her claim, the Architect of the Capitol launched an investigation of Plaintiff Kabakova and accused her of submitting a fraudulent claim. On August 3, 2017, Plaintiff Kabakova's claim for compensation was denied because the Department of Labor concluded that the factual component of Fact of Injury had not been met. Plaintiff Kabakova requested a review of the decision, and on December 7, 2017, the Branch of Hearings and Review concluded that Plaintiff Kabakova submitted evidence to support that she was injured during the performance of duty when she fell in a stairwell, and the August 3, 2017 decision was reversed in part relative to the diagnosis of concussion and a second opinion examination with a board certified specialist was required to determine whether any additional conditions should be accepted. On March 28, 2018, Plaintiff Kabakova was evaluated and following an opinion from the second evaluation, Plaintiff Kabakova's case was accepted for an additional condition related to the work injury.

17. While Plaintiff Kabakova's workers' compensation claim was pending, beginning in August 2017, Mr. Kelly ignored Plaintiff Kabakova's medical documentation provided to him, placed her on AWOL, and did not allow her to use sick leave to attend medical and dental appointments, or take annual leave for her medical needs. Plaintiff Kabakova was placed on AWOL for pay period 12 after he claimed that the medical documentation was insufficient, even though it was the same medical documentation, which was provided for pay periods 11 and 13.

18. On August 30, 2017, Mr. Kelly denied Plaintiff Kabakova's August 25, 2017 annual leave request despite being provided medical documentation.

19. After Plaintiff Kabakova filed a workers' compensation claim with the Department of Labor, Mr. Kelly initiated a complaint against her with the Office of Inspector General accusing her of submitting a fraudulent workers' compensation claim.

20. On November 20, 2017, Plaintiff Kabakova filed a complaint based on her gender, sexual harassment, date of birth (July 1967) and national origin and reprisal.

21. On November 21, 2017, Plaintiff Kabakova was contacted by Carl Baldwin in the Agency's Conciliation Program, and was advised that "As long as you are on medical leave status, it is inappropriate for you to engage in work-related activities, including filing complaints." . . . "Our office will be unable to assist you or discuss your claim until you have returned to work." As a result, Plaintiff Kabakova was prevented from filing an EEO complaint.

22. In January 2018, the Office of Inspector General interviewed Mr. Kelly as part of its investigation of the claims that Plaintiff Kabakova submitted a fraudulent claim for workers' compensation. Present at the interview was James Wilson, the Agency's Director of Human Capital Management Division. Mr. Wilson previously advised Plaintiff Kabakova that he would ensure that she would never be able to return to work at the Architect of the Capitol.

23. On January 4, 2018, the Office of Inspector General initiated an investigation of Plaintiff Kabakova for workers' compensation fraud.

24. Plaintiff Kabakova filed an EEO complaint in February 2018 and again the Architect of the Capitol (AOC) refused to investigate her claim.

25. In its Semi-Annual Report to Congress for the period of October 1, 2017 to March 31, 2018, the Office of Inspector General reported that: "The OIG initiated an investigation based on information received from the Human Capital Management Division, concerning an AOC employee who was suspected of faking an injury and fraudulently completing a Claim for Compensation (CA-7) certifying that the information they provided was true and accurate to the best of their knowledge and belief. This investigation substantiated that based on preponderance of the evidence, the employee committed FECA fraud when they fabricated an injury and made false statements by submitting a claim for compensation. The employee also violated AOC policies when they were absent from work without supervisory approval and did not cooperate with the AOC OIG during the investigation. This investigation is closed and pending management action." The report contained false information because Plaintiff Kabakova did not fake an injury or submit a fraudulent CA-7 form.

26. Plaintiff Kabakova was terminated from AOC employment on April 14, 2018 in accordance with the Federal Employment Compensation Act (5 U.S.C. 8151). Plaintiff Kabakova had a retention right for the position for one year from the date the wage loss began (April 13, 2017) but did not return to work within the time frame of twelve months or provide medical documentation granting a return to duty.

27. On June 30, 2018, Plaintiff Kabakova sought EEO counseling and later filed a complaint of discrimination based on national origin, gender, and age discrimination as a result of information in the Semi-Annual report to Congress. On August 16, 2018, Plaintiff Kabakova filed a complaint of reprisal.

28.     In its Semi-Annual Report to the Congress for the period of April 1, 2018 to September 30, 2018, the Office of Inspector General included several false statements concerning Plaintiff Kabakova, including a report that it initiated an investigation based on information received from a AOC Senior Manager, and that OIG attempted to contact Ms. Kabakova for several months using her email address, personal telephone number, AOC cellular phone number and email, with no success. OIG reported that Ms. Kabakova did not make herself available during the investigation, and by refusing to participate in the investigation, Ms. Kabakova acted with willful disregard for the complaint's truth or falsity, and the investigation substantiated that the AOC employee violated AOC orders pertaining to Government Ethics (making false complaint) and not cooperating with an OIG investigation and the employee was terminated from AOC on April 14, 2018.  In fact, the complaint that Plaintiff Kabakova made about Mr. Kelly was true and Plaintiff Kabakova responded promptly when she was contacted by OIG.

29.     After Plaintiff Kabakova was approved for workers' compensation benefits by the Department of Labor, the Architect of the Capital defamed her by submitting false information to the Department of Labor in an attempt to interfere with her workers' compensation benefits. On July 23, 2018, James L. Wilson, Assistant Inspector General for Investigations for the Architect of the Capitol, submitted an Investigative Memorandum concerning the compensation case of Plaintiff Kabakova to the Department of Labor in Plaintiff Kabakova's workers' compensation claim.

30.     On October 9, 2018, the Department of Labor Office of Workers' Compensation Programs District Director, Abbas Sadiq, wrote to James Wilson and advised that "A thorough review of Ms. Kabakova's case file has been conducted, along with a review of

your investigative memorandum.  We have not found any evidence of FECA fraud or evidence to support a rescission of the acceptance of the claim.  Ms. Kabakova filed a timely claim establishing that she was a Federal employee who sustained an injury in the performance of duty and that her injuries were causally related to the claimed injury/event."

31. On February 4, 2019, Plaintiff Kabakova was notified that the mediation period had ended in Case No. 18-AC-63 without resolution and that she could file a complaint in accordance with Section 408 of the CAA in the U.S. District Court.  On March 26, 2019, Plaintiff Kabakova was advised that the mediation period ended in Case No. 19-AC-04, and she must file a civil complaint no later than 90 days for after the end of the period of mediation.

**<u>Count I</u>**

**Violation of Title VII of the Civil Rights Act of 1964, as amended
42 U.S.C. § 2000e *et seq.***
*National Origin and Sex Discrimination*

32. Plaintiff incorporates by reference paragraphs 1 through 31 as if fully stated herein.

33. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's national origin.

34. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

35. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

36. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant knowingly and intentionally subjected Plaintiff to disparate treatment and created a hostile work environment based on her national origin and sex by: 1) subjecting Plaintiff to workplace harassment as detailed above, including: 1) mocking of her accent and threatening to report to authorities that she copied secret information in the Office of Security Programs; 2) denial of training and attendance at conferences; 3) sabotaging her work and refusal to approve her inspections and investigations; 4) initiating an OIG inspection based on false charges of workers' compensation fraud; and 5) reporting to the Department of Labor false allegations that she engaged in worker's compensation fraud.

37. As a result of such acts, Plaintiff has suffered damages.

## Count II

**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e *et seq.***
*Retaliation*

38. Plaintiff incorporates by reference paragraphs 1 through 37 as if fully stated herein.

39. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because such individual filed a complaint of discrimination.

40. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

41. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

42. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant knowingly and intentionally subjected Plaintiff to retaliation and a retaliatory hostile work environment after she complained about discrimination by 1) subjecting Plaintiff to workplace harassment as detailed above, including: 1) mocking of her accent; 2) denial of training and attendance at conferences; 3) sabotaging her work and refusal to approve her inspections and investigations; 4) initiating an OIG inspection based on false charges of workers' compensation fraud; and 5) reporting to the Department of Labor false allegations that she engaged in worker's compensation fraud.

## Count III

**Violation of the Age Discrimination in Employment Act**
**29 U.S.C. § 633a**
*Age Discrimination*

43. Plaintiff incorporates by reference paragraphs 1 through 42 as if fully stated herein.

44. The Age Discrimination in Employment Act, 29 U.S.C. § 633a, provides that, in executive agencies of the United States, all personnel actions affecting employees or applicants for employment who are at least 40 years of age shall be free from discrimination based on age.

45.    At all pertinent times, the Defendant was an employer subject to provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

46.    At all pertinent times, Plaintiff was an employee entitled to protection under the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

47.    In violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a, Defendant knowingly and intentionally subjected Plaintiff to discrimination and created a hostile work environment based on her age by making comments to Plaintiff Kabakova that because of her age and experience she did not need additional training.  Mr. Kelly then engaged in a pattern of discriminatory conduct to cause Plaintiff's termination, including: 1) denial of training and attendance at conferences; 2) sabotaging her work and refusal to approve her inspections and investigations; 3) initiating an OIG inspection based on false charges of workers' compensation fraud; and 4) reporting to the Department of Labor false allegations that she engaged in worker's compensation fraud.

48.    As a result of such acts, Plaintiff has suffered damages.

**Prayer for Relief**

Wherefore, Plaintiff prays as follows:

A.    Issue a declaratory judgment that Defendant's practices toward Plaintiff were violative of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 633a;

B.      Enjoin Defendant from discriminating against employees who report discriminatory practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

C.      Award Plaintiff damages, including back pay and front pay and all lost benefits, and compensatory damages for emotional distress and hardship created by the Defendant's discrimination and retaliation, in an amount no less than $300,000;

D.      Award payment of all fees, costs, expenses, including attorneys' fees and expert fees; and

E.      Award Plaintiff such other relief as to which she may be deemed entitled.

### Jury Trial Demand

Plaintiff demands a jury trial on all counts so triable.

Respectfully submitted,

_/s/_
David A. Branch #438764
Law Office of David A. Branch & Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com